Good morning. My name is Jessica Weltman. I'm here with the Federal Defenders of Montana, and I'm here today to represent Mr. Nate Souza. And if I may reserve two minutes of time for rebuttal, please. May it please the Court. The District Court revoked Mr. Souza's sentence of supervised release and sentenced him to prison for 84 months or seven years. And if I may, I'd like to stress three related points that made this extraordinary sentence possible. First, this revocation and sentence was decided in part based on the allegation that was not even in the petition, and this is referring to the one ounce distribution of marijuana. Second, each of the contested allegations are based on a lack of sufficient evidence to make the findings that were found. And then third, the issues tie into the lack of due process and the ability to confront the persons who first, the one person who was the victim of the theft of the drug money, and second, to confront also a person who even saw the money or saw that the money was how it was counted. Now, let me just be sure that I know what's contested and what isn't. There were three violations alleged, and it's my understanding that he does not challenge the second and the third, the ones relating to being truthful with the probation officer and paying child support. Correct, Your Honor. So we're talking only about the first violation? Correct. And so the ones that he admitted to were the Class A, or rather the Class C violations. Right. And the Class 1 violation has two subparts, right? Yes. The purse and then the drug money. Right. And so if I may return to the one ounce of marijuana that wasn't even in the petition, and the reason that this is important and concerning is because it kind of serves as the point that kind of buttresses, that creates the element of reliability for the rest of the thing, why the story even hangs together, why the people involved would have even believed that Mr. Sousa was capable of coming up with this sort of deal. And so the fact that it wasn't noticed to him and he didn't really have that opportunity to assess that, that's problematic because it kind of creates that. But does it have to be noticed to him if it's not a basis for the revocation? You know, I think it's a little bit of a catch-22 in that the rules provide that you have notice so that you can consider it and confront the evidence. But at the same time, judges may look broadly at different issues that are there. But this was so important to the allegations that happened, and it was itself not based on sufficient evidence. But the finding of violation rested on theft, not on the possession of drugs, correct? Correct. So why isn't there sufficient evidence of theft with respect to the $10,000 amount, the felony? I think that that kind of goes into a couple of different things. In terms of the $10,000, part of that lack of evidence is the fact that you don't have anyone who's testifying about what happened that day, when the theft actually occurred. The person who was present, Mr. Sousa apparently or allegedly had gone into a car with this other individual and had, you know, things had conspired and had stolen the money that was allegedly made for drugs. That person wasn't there to testify. The person he called allegedly and said, Mr. Waters, this happened to, you know, Sam, this happened to me. I was stolen. That person wasn't there to testify. Generally, hearsay is admissible in these proceedings, though, correct? Yes. And hearsay is absolutely admissible in the proceedings. So given that fact, why isn't there enough to permit the reasonable inference that he stole the money? Well, the hearsay is admissible given that there's good cause to deny the ability to confront the people that were absent or the people providing this hearsay evidence. And the fact that they weren't there, that the court has provided a test that the court, that the district court is to go to to figure this out. And this is coming from the Fifth Amendment right-to-do process, not the Sixth Amendment right to confrontation. And then the process that's due is also set out in Rule 32 and commute in other cases, kind of have shared and the Ninth Circuit is very clear that there's a balancing test that should occur with the evidence. And so you're balancing things that Your Honor has brought up. So you're looking at things like how do we assess the significance of the interest in this case to Mr. Sousa's ability to confront the person who, the victim of the crime, let alone someone who could have counted the money that happened. And his interest in this is really important. It goes to the importance of the ultimate issue that happened. Because you don't have anyone who was there at the trailer. You don't have anyone who counted the money. So you kind of have a story, but you don't know for sure that there was any amount of money, what really happened. You don't know what happened to this Mr. Treff Standberg. You don't have those people here. So the ability to confront those people, that interest is high. And even the fact that the government had brought up the idea that, well, you know, this information might have been admissible. Okay. We admit hearsay in a revocation hearing. But even so, it might have been admissible under an exception, an excited utterance exception to the rule. But the Ninth Circuit has never said just because it might have been admissible in general in terms of hearsay exception, the Ninth Circuit has never actually said that this would be, that this is all you need to do. You still need to run through the test. And the United States Hall case that said that, okay, we can look in terms of reliability, it did not make an ultimate finding that that was immediately admissible. So the fact that hearsay is admissible doesn't mean that as you run it through this test, in this case, under these circumstances, that there was sufficient process. Counsel, how do you get around the fact that the district court judge found the people who related the tale to be very credible? You know, the district court is given deference for that credibility finding. I think that it's important when you kind of try to piece together the story, each of the players kind of tells a little bit different part of the story. And, for example, the one person, Mr. Hood, who gave the story about he was the only one to have actually testified that he saw the money. And what the judge actually said about Mr. Hood on ER 214 was that Mr. Nate Hood is not quite as believable in some respects, but his testimony does not weigh heavily given the testimony of Sullivan, Jesse Sullivan. But Jesse Sullivan testified, well, I didn't even see the money. So you have – so there's a credibility determination, but when you put it with the importance of the facts that are being testified to, you're kind of left without that reliability that's there. Yeah, but the court doesn't consider the testimony in a vacuum. It looks at all of the testimony together. And having done that, the district court overwhelmingly believed the witnesses who testified at the revocation hearing. And I think that credibility determination is important, but I think looking at the process that is due in the case, I think that's something that weighs heavily in looking at the issue. And to remember also that this wasn't the only finding that the district court made. You know, the district court also made the finding that Mr. Sousa had stolen the purse that was left in the Army-Navy store. And that information, there was – you know, that was a case where there was absolutely insufficient evidence about that. Well, I don't know about that. If the court said that Sullivan was extremely credible and Sullivan gave testimony that would support an inference that it was Mr. Sousa who took the purse, why wouldn't that be a permissible finding by the district court? I think the problem with that is the fact that Mr. Sullivan never testified or he specifically testified he did not see Mr. Sousa take the money. He did not see Mr. Sousa take the purse. And then he also, when you look at – the district court can find him credible, but that doesn't – there isn't the evidence there to make that inference. Well, but the two of them were the primary suspected culprits. So if the district court believed Mr. Sullivan when he said, I didn't take it and that Mr. Sousa told me he thought about taking the money to get his tires fixed, why wouldn't that be sufficient for the district court to make a finding? I think the problem with that is that the preponderance of the evidence standard that's there, you know, that's meant to say that there's reliable, specific evidence that you have and ensure that the government carries the burden. And here the government itself even said, we don't think we carry the burden on this. It's kind of a toss-up. And while that's not evidence, it certainly goes to the level of problems with reliable evidence. If the $10,000 felony theft is supported by appropriate evidence, does it matter whether the purse misdemeanor is not for finding violation number one? If it was supported by... There were two things. There's the purse and there's the $10,000. If the $10,000 is supported by the evidence and assuming your argument that the purse is not, what is the result? Isn't violation one still supported? I think that what becomes unsupported... It's a yes or no answer. If the larger one is supported and the smaller one is not, can violation one be upheld? Yes. We've used up a lot of your time with questions, so you may have one minute for rebuttal. May it please the Court, Bishop Brewell on behalf of the United States. So long as there's evidence to support the $10,000 theft here, it doesn't matter whether there was the charge of the ounce of marijuana distribution or if the purse was stolen or not. The guideline range is not going to change. We have the one violation that we need to revoke Mr. Sousa's term. So are you conceding on the theft of the purse charge? No. I think there's a preponderance of the evidence to support that based on what Your Honors have already discussed, that the judge basically made a credibility finding here. The purse was at the front desk. There were two men, Susan and Mr. Sullivan, who had access to it, and Mr. Sullivan said that Mr. Sousa said, oh, well, maybe I should take that money to pay for my repaired tire, and then all of a sudden the purse goes missing. I think on a preponderance of the evidence standard, if the judge believed Mr. Sullivan's testimony as he suggested he did, that's enough or under a sufficiency of the evidence standard. But you don't have to win on that to avail? We do not. If we win on the theft of the $10,000, that's sufficient for us because we only need one violation to revoke under the Daniel case, and so long as that revocation doesn't change the sentencing guidelines, range does not change based on that, then we have harmless error, essentially, for any of those extra revocations that might not be supported if the court felt they were not supported. It's also our position that the Martin case makes clear that the Sixth Amendment right to confrontation sets the upper limit on the Fifth Amendment right to confrontation. So if we don't have a Sixth Amendment right to confrontation, we don't even get to the balancing test. The balancing test weighs the defendant's interest in his right to confrontation versus the good cause that the government shows for not providing the witness to be confronted. If you don't have a right to confrontation, there's no interest in a right to confrontation way in the first place. So is it your position that there's no right to confrontation in a revocation proceeding? No, it's our position that if you don't have a – if you wouldn't have a right to confrontation under the Sixth Amendment, then you definitely don't have the lower Fifth Amendment right to confrontation. Okay, so apply that to the facts of this case. What are you saying vis-à-vis the facts of this case? So they're challenging the statements of Mr. Strandberg about when he calls up – these people were basically his co-conspirators in a marijuana – a conspiracy to distribute marijuana, and he makes these statements to them. Well, those are not testimonial statements under the Crawford line of cases because he certainly didn't want those statements to be preserved for a future record that's going to go into a court. The Crawford case says that statements between – in furtherance of a conspiracy are not testimonial statements. And the defendant suggests in his reply brief, well, this is a more flexible standard under the Fifth Amendment. Well, it's more flexible in that if you did have a right to confront on the Sixth Amendment, then in the revocation proceedings we go through this balancing test. So if you had that right, you might not have it in the Fifth Amendment context. But if you don't have it in the Sixth Amendment context, you can never have it in the Fifth Amendment context because of that upper limit. So your argument is if this had been a criminal case, those would have been co-conspirator statements and therefore not testimonial. That they wouldn't have been testimonial. They may have not qualified under the hearsay exception under there because it's a question of whether you could have used them against Mr. Sousa because he wouldn't maybe be a co-conspirator in the sense that he didn't have the same plan that they did. But when you're talking about confrontation and whether they're testimonial, if they're between co-conspirators, regardless of whether he is one of their co-conspirators or not, they're not testimonial in that sense. And so since the hearsay rules don't apply in the revocation proceeding context and these statements aren't testimonial, then they simply didn't have a right to confirm. Did you make this argument in the district court? Was this issue fleshed out in the district court? The district court, they made their challenge of saying confrontation and the district court simply said that they were overruled on those. So we didn't need to make a further argument beyond that. But I think it's supported in the case law and it's another reason to uphold the reasoning that the court had for. What do you think is the strongest case that supports your argument applying by analogy the co-conspirator statements in the revocation process? What case helps you out on that point? I think it would be a combination of Martin and Crawford. Crawford for the fact that statements from people who are trying to further a conspiracy are not testimonial. And then Martin as well as Morrissey saying that the Fifth Amendment right is a lesser right than the Sixth Amendment right, that the Sixth Amendment in Martin, they say, puts an upper limit on what the Fifth Amendment right is. And then I think it's also the notion that how can you have this balancing test where on the one side you're balancing an interest in the right to confrontation if you wouldn't have had a right to confrontation in a trial setting anyway? Yeah, that's kind of a stretch for me, the argument that you're making, because I think you're trying to transport concepts that involve criminal conspirators that have been charged in an indictment into the revocation process. I'm not sure it's a good fit for me personally. You think they would be testimonial statements? Well, no, counsel, I think the issue is that as you said yourself, he was not a co-conspirator. If one of the co-conspirators were on trial, the other statements would be admissible. But he's an outsider to the conspiracy. He stole from the conspirators. They don't like him. So if he were on trial for the theft as a criminal charge, wouldn't he be entitled to confrontation vis-à-vis the entire conspiracy? The evidence wouldn't be able to go in because of the hearsay rule, because he wouldn't be a member of the conspiracy at that point. So you have to be a member of the conspiracy. Right. So he would have a right to confront them. He wouldn't have a right to confront because they wouldn't be testimonial, but he would have a right to exclude them as hearsay. Well, then the only way to get them in would be to give – and we're going around in circles, but the only way to have that evidence be admissible, assuming a criminal trial for this theft, would be for the conspirators to testify and be cross-examined. Correct? They did testify. That's a yes or no, correct? Correct. Okay. But that's because of the fact that the hearsay rule would exclude it at trial. In the revocation proceeding, the hearsay rule doesn't apply. It's not because confrontation would exclude it at trial. Well, but that's the argument you're making. But that's the whole point. Isn't that the whole point of hearsay exceptions? They're exceptions to confrontation. It's a question – I would say under the Crawford line of cases that they've sort of moved away from that and they moved to this testimonial statement. And under the more recent Michigan v. Bryant case, they've suggested that a lot of the reason these hearsay statements have traditionally gotten in is because they also deal with things that are not testimonial. Okay. Assuming we don't follow your logic, could you go through the balancing analysis for us? Right. So you weigh the interests of the party and their right to confrontation, and that looks at basically how important were the statements that they didn't get to confront in here. And in this case, they simply weren't that important. If you look at all the non-hearsay evidence beside it, you have the meeting at the Army-Navy to set up this deal with statements by Mr. Sousa bargaining with the others about the amount and the cost. These are his statements. So he doesn't have a right to confront himself. Then you have Hood watching the money being counted out. So we know the money's there. Sousa then says, the guy with money goes with me, again a statement of Sousa. Then Mr. Strandberg goes with him. Then a little bit later we have Mr. Strandberg calling, crying hysterically, and classic excited utterance saying, we got jacked. Now even if you don't even take that we got jacked statement in, you then have Mr. Childs and Mr. Waters going to pick up Mr. Strandberg and we don't have any drugs. Then in the days after this occurs, Mr. Sousa, who it's clear had no money to begin with, he's not making his child support payments. He's living with his mother. He's very appreciative that he got this job at the Army-Navy store. All of a sudden has a ton of cash to go out and buy a $6,000 car. He gives his girlfriend $2,000 and tells her to hold it for him. She asks where it comes from and he says, well, you don't want to know. Then he goes out and he moves out of his house that he's living in with his mother, gets an apartment of his own with cash. So he's got all this influx of cash when he had no other source for that cash. Okay, so those are the facts. Right. But it seems as if in Perez we said that there should be a balance between the importance of the evidence and the nature of the facts and the opportunity to refute the evidence versus the inconvenience to the government of bringing the hearsay declarant to the proceedings. So how do you balance those? So all those facts point out that the statements of Mr. Strandberg were not important because without them we could have still had the evidence here. You also look at the reliability of the evidence. It's cross-corroborated by all these people. His ability to challenge the statements of those who were there, he had an opportunity to challenge them about the statements Mr. Strandberg made to impeach them. So the interest in competition is extremely low here. At that point, the Comito case says that mere inconvenience and expense are sufficient for us to win on the balancing test. And he lives in Minnesota. That's mere expense and inconvenience to bring him to Montana. And so that's why we win on the balancing test. Thank you, counsel. And Ms. Weltman, you have one minute. Thank you, Your Honor. Just two main points I'd like to make. So even assuming, asking about the corroboration, even assuming that Mr. Sousa has a somewhat weakened interest in the right because there's some corroborating evidence, you still don't have on the balance when you look through the due process, you still don't have the government offering any reason. And so perhaps expense is a reason, but some of the cases say you can do things like videoconference and things like that. And even Comito has said you also look at the consequences. You kind of roll that in with the reliability and the other parts of this part of the balancing size. And looking at what happens in Comito, they give the example of a mandatory minimum sentence. Here, the consequences are a huge difference in terms of the sentencing guidelines that would be available between an A and a C violation for a client. And the one other point that I wanted to make is that I believe that counsel is really absolutely incorrect in suggesting that you don't reach that balancing test in the revocation process. There's no Ninth Circuit law that supports that. Thank you. The case just argued is submitted. We appreciate the arguments of both parties. And our next argued case is Laurel Park Community LLC versus the City of Tumwater. Thank you.
judges: Noonan, Graber, Rawlinson